UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KEVIN PERROU,

                Petitioner,                        Case Number 06-14941
                                                    Honorable David M. Lawson

v.

KURT JONES,

                Respondent.

_____/

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

      The petitioner, Kevin Perrou, presently confined at Carson City Correctional Facility in Carson City, Michigan, has filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. A Bay County, Michigan jury convicted the petitioner of armed robbery, assault with intent to do great bodily harm less than murder, home invasion, and larceny from a building. He was sentenced to various concurrent prison terms, the longest of which was twenty to forty years. The petitioner alleges that he is in custody in violation of his constitutional rights to a fair trial, to due process of law, and to effective assistance of counsel. The respondent has filed an answer to the petition, asserting that the petitioner's claims are defaulted or without merit. The Court finds that the petitioner's claims are meritless. Therefore, the petition will be denied.

I.

      The charges stem from an incident in which the petitioner and his son, Justin Perrou, went to the home of Norman Glaspell ostensibly to collect a debt. Glaspell was assaulted and injured. The State alleged that the petitioner and Justin Perrou broke into Norman Glaspell's home, attacked Glaspell, and took a stereo speaker from his home. Both defendants were charged with armed robbery, assault with intent to commit murder, first-degree home invasion, and larceny in a building.

The petitioner moved for a separate trial, but the trial court denied that motion and the petitioner and his son were triad together.

At trial, Mr. Glaspell testified that the defendants came to his house about 2:30 a.m. on October 18, 1999. They asked him if he had any beer, and they said that they could get some cocaine. There was no conversation about money. The defendants left, but returned about thirty minutes later. Glaspell went to the back door where he saw Justin Perrou standing in the doorway with a baseball bat; the petitioner was hiding by the water tank. The petitioner tackled him and a struggle began. Glaspell said he felt something hit him on the head, and he could not move his legs after he felt a sharp object in his back. Then the Perrous left, and Glaspell fell unconscious.

One of Mr. Glaspell's neighbors found him in the doorway of his house later that morning. Glaspell informed the neighbor and a state police officer that the petitioner caused his injuries. Glaspell's injuries subsequently caused him difficulty walking due to being stabbed near his spinal cord, and his head injuries resulted in the surgical installation of seven plates in his head. The plates got infected and had to be replaced. They had become infected again at the time of trial.

The defense theories were that Norman Glaspell was not a credible witness, the defendants were drunk and lacked specific intent to commit the crimes, Justin Perrou had acted in defense of self and the petitioner, and the petitioner made no armed attack on Glaspell. The only defense witness to testify was Justin Perrou.

Justin Perrou testified that he and the petitioner went to buy beer about 2:00 a.m. on October 18, 1999. Then they went to Norman Glaspell's home because the petitioner wanted to talk to Glaspell, and Glaspell owed the petitioner money. At Glaspell's home, the petitioner and Glaspell spoke to each other, after which the petitioner told Glaspell that he and his son were going to buy

-2-

some more beer and they would be back.  The petitioner and Justin bought a six-pack of beer and returned to Glaspell's home.  Justin testified that although the petitioner wanted only to go inside and drink the six-pack with Glaspell, it was obvious to Justin that Glaspell did not intend to re-pay the money that he owed the petitioner.  Consequently, Justin decided to take one of Glaspell's stereo speakers as collateral for the debt.  He intended to sell the speaker and give the $100 he acquired from the sale to the petitioner.  The petitioner told him to forget the speakers; he just wanted to talk with Glaspell.

Justin then stated that the petitioner walked in the back door of the house, tripped, and fell.  Glaspell came to the back door and hit Justin with a hammer.  The petitioner tried to calm Glaspell and began to wrestle with him, but Glaspell fell backwards and hit his head.  Glaspell grabbed Justin, and the petitioner grabbed Glaspell.  Justin broke free and grabbed the speaker, which he put in the back of his truck.  When he returned to the house, the petitioner and Glaspell were talking.  However, when he suggested that they leave, Glaspell hit the petitioner over the head with a pipe and reached for a knife.  Justin testified that he was convinced that Glaspell was prepared to kill the petitioner, so he grabbed Glaspell's knife and stabbed Glaspell in the back to protect himself and the petitioner.  Justin said he threw the knife away, but then Glaspell hit him again with a pipe.  Justin grabbed the pipe from Glaspell and hit him on the head with it.  Glaspell released his grip on the petitioner and fell.  Justin and the petitioner then left the house and went home.

Justin claimed that he had not intended to rob Mr. Glaspell or hurt him in any way.  He voluntarily gave a statement to the police later that afternoon after he was arrested.  The taped statement was played for the jury.  It was similar to Justin's trial testimony, but it was helpful to the petitioner in that he said the petitioner had wanted to go home and it was Justin's idea to get Norman

-3-

Glaspell's speakers even if he had to do it without the petitioner's help. Justin also admitted in his statement to the police that he may have stabbed Mr. Glaspell more than one time, and the petitioner did not stab Glaspell or even "want to do this."

On October 4, 2000, the jury found the petitioner and Justin Perrou guilty of armed robbery, Mich. Comp. Laws § 750.529, assault with intent to do great bodily harm less than murder, Mich. Comp. Laws § 750.84, first-degree home invasion, Mich. Comp. Laws § 750.110a(2), and larceny in a building, Mich. Comp. Laws § 750.360. The trial court sentenced the petitioner to twenty to forty years in prison for armed robbery, five-and-a-half to ten years for assault, eleven-and-a-half to twenty years for home invasion, and one to four years for larceny.

The petitioner raised four claims, including the denial of his severance motion, the failure of the trial court to give a claim of right instruction on the larceny and robbery charge, ineffective assistance of counsel because trial counsel did not request the claim-of-right instruction, and a double jeopardy violation resulting from conviction of both robbery and larceny. The court of appeals vacated the larceny conviction and affirmed his other convictions in an unpublished, *per curiam* opinion. *People v. Perrou*, No. 231404, 2003 WL 193541 (Mich. App. Jan. 28, 2003). On July 28, 2003, the Michigan Supreme Court denied leave to appeal because it was not persuaded to review the issues. *People v. Perrou*, 469 Mich. 864, 666 N.W.2d 673 (Jul. 28, 2003) (table).

The petitioner subsequently filed a motion for relief from judgment, which alleged ineffective assistance of trial and appellate counsel. The trial court denied that motion, and both appellate courts denied leave to appeal for failure to establish entitlement to relief under Michigan Court Rule 6.508(D). *People v. Perrou*, No. 258218 (Mich. Ct. App. Apr. 7, 2005); *People v. Perrou*, 474 Mich. 935, 706 N.W.2d 23 (Nov. 29, 2005) (table).

-4-

The petitioner signed and dated his habeas petition on October 27, 2006, raising the following grounds for relief:

I.  The trial judge's denial of Petitioner's motion for severance was an abuse of discretion and caused a violation of due process because prejudicial evidence relevant to codefendant Justin Perrou but not to Petitioner Kevin Perrou was heard by the jury.

II.  Petitioner was denied his federal constitutional right to due process of law because the trial judge failed to instruct the jury on the defense of claim of right even though co-defendant Justin Perrou's statement to the police and testimony showed that he and Petitioner took the stereo speaker under a claim of right.

III.  Defense counsel's failure to request an instruction on the defendant's claim of right or to object to the trial judge's failure to instruct on that defense denied Petitioner his federal constitutional right to the effective assistance of counsel.

A.  Trial counsel was ineffective for failing to participate in voir dire jury selection due to conflicts of interests between Petitioner and counsel.

B.  Trial counsel was ineffective for failing to object at trial to instances of prosecutorial misconduct.

C.  Trial counsel was ineffective for failing to object to co-defendant counsel's antagonistic remarks toward Petitioner during closing argument, and asserting Petitioner's guilt to jury as to an element of home invasion without authorization from Petitioner or Petitioner's counsel.

IV.  Petitioner was denied his federal constitutional right to effective assistance of appellate counsel, where he was prejudiced by appellate counsel's failure to assist Petitioner in pursuing and perfecting an adequate appeal.

A.  Appellate counsel was ineffective for failing to communicate or support successor attorney regarding appellate strategy or possible issues.

B.  Appellate counsel was ineffective for failing to perform or fulfill adversarial function, where Petitioner suffered a complete lack of

-5-

appellate counsel during oral argument in that counsel failed to attend.

The respondent filed an answer to the petition on May 9, 2007, but did not file the Rule 5 material until July 11, 2007.

## II.

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996), which govern this case, "circumscribe[d]" the standard of review federal courts must apply when considering applications for a writ of habeas corpus raising constitutional claims, including claims of ineffective assistance of counsel. *See Wiggins v. Smith*, 539 U.S. 510, 520 (2003). As amended, 28 U.S.C. § 2254(d) imposes the following standard of review for habeas cases:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented at the State court proceedings.

28 U.S.C. § 2254(d). Therefore, federal courts normally are bound by a state court's adjudication of a petitioner's claims unless the state court's decision was contrary to or involved an unreasonable application of clearly established federal law. *Franklin v. Francis*, 144 F.3d 429, 433 (6th Cir. 1998). Mere error by the state court will not justify issuance of the writ; rather, the state court's application of federal law "must have been objectively unreasonable." *Wiggins*, 539 U.S. at 520-21 (quoting *Williams v. Taylor*, 529 U.S. 362, 409 (2000) (internal quotations omitted)). Additionally,

-6-

this Court must presume the correctness of state court factual determinations.  28 U.S.C. §

2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in

custody pursuant to the judgment of a State court, a determination of a factual issue made by a State

court shall be presumed to be correct."); *see also West v. Sibilate*, 73 F.3d 81, 84 (6th Cir. 1996)

(stating that "[t]he court gives complete deference to state court findings of historical fact unless

they are clearly erroneous").

The Supreme Court has explained the proper application of the "contrary to" clause as

follows:

> A state-court decision will certainly be contrary to [the Supreme Court's] clearly
> established precedent if the state court applies a rule that contradicts the governing
> law set forth in our cases . . . .
> A state-court decision will also be contrary to this Court's clearly established
> precedent if the state court confronts a set of facts that are materially
> indistinguishable from a decision of this Court and nevertheless arrives at a result
> different from [the Court's] precedent.

*Williams*, 529 U.S. at 405-06.

The Supreme Court has held that a federal court should analyze a claim for habeas corpus

relief under the "unreasonable application" clause of § 2254(d)(1) "when a state-court decision

unreasonably applies the law of this Court to the facts of a prisoner's case."  *Id.* at 409.  The Court

defined "unreasonable application" as follows:

> [A] federal habeas court making the "unreasonable application" inquiry should ask
> whether the state court's application of clearly established federal law was
> objectively unreasonable . . . .
> [A]n unreasonable application of federal law is different from an incorrect
> application of federal law . . . .  Under § 2254(d)(1)'s "unreasonable application"
> clause, then, a federal habeas court may not issue the writ simply because that court
> concludes in its independent judgment that the relevant state-court decision applied
> clearly established federal law erroneously or incorrectly.  Rather, that application
> must also be unreasonable.

-7-

*Id.* at 409-11; *see also Murphy v. Ohio,* 551 F.3d 485, 493-94 (6th Cir. 2009); *Eady v. Morgan*, 515 F.3d 587, 594-95 (6th Cir. 2008); *Davis v. Coyle*, 475 F.3d 761, 766-67 (6th Cir. 2007); *King v. Bobby*, 433 F.3d 483, 489 (6th Cir. 2006); *Rockwell v. Yukins*, 341 F.3d 507, 512 (6th Cir. 2003) (en banc).

## A.

The petitioner alleges his rights under the Due Process Clause were violated when the state courts denied his motion to sever his trial from Justin Perrou's trial. The petitioner contends that the joint trial resulted in the jury hearing irrelevant and prejudicial evidence and antagonistic remarks about himself from Justin's attorney. The petitioner also contends that the jury likely presumed from Justin's testimony that the petitioner shared Justin's specific intent to commit the crimes.

The petitioner cites *Zafiro v. United States*, 506 U.S. 534 (1993), in support of his claim that he should prevail on this issue. However, the writ of habeas corpus under 28 U.S.C. § 2254 is intended to redress *constitutional* violations where the Supreme Court has established clear precedent. *Zafro* was not decided on constitutional grounds, rather the decision in that case was based on an interpretation of Federal Rules of Criminal Procedure 8, 14, and 18. *Phillips v. Million*, 374 F.3d 395, 398 (6th Cir. 2004). That case is not controlling.

In the habeas context, the Sixth Circuit noted that "[t]he Supreme Court has recognized that states have significant interests in conducting joint trials." *Wilson v. Parker*, 515 F.3d 682, 705 (6th Cir. 2008) (citing *Buchanan v. Kentucky*, 483 U.S. 402, 417-19 (1987)). The Supreme Court also has held that "an error involving misjoinder 'affects substantial rights' and requires reversal only if the misjoinder results in actual prejudice because it 'had substantial and injurious effect or

-8-

influence in determining the jury's verdict.'" *United States v. Lane*, 474 U.S. 438, 449 (1986) (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)).

The petitioner argues that his son's defense and his defense were antagonistic, and some evidence that was offered against his son may not have been admitted if the petitioner were tried alone. However, "[a] defendant is not entitled to severance merely because he might have had a better chance of acquittal in a separate trial. Nor does he have a right to a separate trial merely because defendants present antagonistic defenses." *Stanford v. Parker*, 266 F.3d 442, 458 (6th Cir. 2001) (citations omitted). The State's procedural rules provide trial courts guidance on when to sever defendants for trial, and mere errors in state procedural rulings will not support the issuance of the writ unless the error was so "egregious that [it] den[ied] the defendant fundamental fairness." *Phillips*, 374 F.3d at 398. That is why "[a] petitioner seeking habeas relief on the basis of a trial court's failure to sever his trial from his co-defendant's bears a very heavy burden." *Stanford*, 266 F.3d at 459 (citing *United States v. Horton*, 847 F.2d 313, 316 (6th Cir. 1988)).

In this case, the trial court stated at a hearing on the defendants' motion for severance that the substantial rights of neither defendant would be prejudiced by trying them together. The court concluded from the available information, including the defendants' statements to the police, that the defendants' defenses were not antagonistic and that their factual descriptions of the event in question were very similar to each other.

The Michigan Court of Appeals concluded that the trial court did not abuse its discretion by refusing to sever the petitioner's trial from Justin Perrou's trial. The court of appeals noted that both the petitioner and Justin raised defenses of intoxication, lack of specific intent, and self-defense. Both defendants also questioned Norman Glaspell's credibility. They pointed to his history of

-9-

substance abuse, his memory loss as a result of his head injuries, and the fact that his version of the facts was not corroborated by any other witnesses. Moreover, as the Michigan Court of Appeals recognized, Justin Perrou made a number of statements that were favorable to the petitioner. He stated, for example, that the petitioner had tried to calm down Norm Glaspell and did not attack Glaspell, nor carry a bat. Justin also testified that the petitioner had simply wanted to talk to Glaspell and had discouraged Justin from taking the stereo speaker.

Justin Perrou's defenses were not mutually exclusive or irreconcilable from the petitioner's defenses, and the trial court charged the jurors to consider each defendant separately. The jury did not have to believe Justin at the petitioner's expense. The Court concludes that the decision of the Michigan courts on this issue was not contrary to or an unreasonable application of federal law.

B.

The petitioner alleges that the trial court deprived him of his due process rights by not instructing the jury on the defense of claim of right. In a related claim, the petitioner asserts that his attorney should have requested a jury instruction on a claim-of-right defense and should have objected to the lack on an instruction on that defense. According to the petitioner, the trial evidence, including Justin Perrou's statement to the police, demonstrated that the two defendants took the complainant's stereo speaker under a claim of right.

The Michigan Court of Appeals stated that the petitioner waived his right to review of the jury instructions by not requesting a jury instruction on a claim-of-right defense, but reviewed the merits of the issue anyway. The court held that the evidence did not support a claim-of-right defense and, therefore, defense counsel was not ineffective for failing to request a jury instruction on the defense.

-10-

A defendant generally "is entitled to an instruction as to any recognized defense for which there exists evidence sufficient for a reasonable jury to find in his favor." *Mathews v. United States*, 485 U.S. 58, 63 (1988). However, a petitioner is entitled to habeas relief only if the defective jury instructions "so infected the entire trial that the resulting conviction violates due process." *Cupp v. Naughten*, 414 U.S. 141, 147 (1973). A federal court may not grant the writ of habeas corpus on the ground that a jury instruction was incorrect under state law, *see Estelle v. McGuire*, 502 U.S. 62, 71-72 (1991), and "[a]n omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law." *Henderson v. Kibbe*, 431 U.S. 145, 155 (1977). The jury instruction "'may not be judged in artificial isolation,' but must be considered in the context of the instructions as a whole and the trial record." *Estelle*, 502 U.S. at 72 (quoting *Cupp*, 414 U.S. at 147). On habeas review, this Court is bound by the state court's interpretation of state law. *See Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) (per curiam).

In Michigan,

> "[a] felonious intent is an inseparable and essential ingredient of every larceny, and if a person takes property under a claim of right, however [] unfounded, he is not guilty of the offense. In all cases where one in good faith takes another's property under a claim of right to do so, or under a claim of title in himself, he is exempt from a charge of larceny, however mistaken the claim may be in fact. It is a matter of evidence for the jury whether property was bona fide so taken, or whether it was taken with felonious intent."

*People v. Karasek*, 63 Mich. App. 706, 711, 234 N.W.2d 761, 764 (1975) (quoting 3 Gillespie, Michigan Criminal Law & Procedure (2d ed.), § 1799, pp. 2144-2145)); *see also People v. Henry*, 202 Mich. 450, 455, 168 N.W. 534, 535-36 (1918) (explaining that, if a defendant in good faith believes that the money which he demanded was his money and that he was entitled to it, he is not guilty of robbery or larceny because there is no felonious intent under those circumstances).

-11-

However, a claim of right may not be "a 'mere cover for a felonious taking. The taker's claim of right must be something more than a vague impression; it must amount to an honest conviction.'" *Karasek*, 63 Mich. App. at 713, 234 N.W.2d at 765 (quoting 52A C.J.S. Larceny § 26, pp. 449, 450).

The state court's decision not to give an instruction as to claim of right did not "so infect[] the entire trial that the resulting conviction violates due process." *See Cupp*, 414 U.S. at 147. The evidence supporting such a defense came solely from co-defendant Justin Perrou's testimony and consisted of an assertion that Norman Glaspell owed money to the petitioner: Justin testified that on the night in question, the petitioner had said he wanted to talk to Glaspell and that Glaspell owed him money. Justin further testified that, at Glaspell's home, it became obvious to him that Glaspell did not intend to give the petitioner the money he owed him. At no time did any witness suggest that the petitioner had a legal right to the stereo speaker itself. Michigan law does not support the theory that a person owed money has a right to take an item of personal property that is an equivalent value of the debt absent prior agreement to that effect. *See, e.g., People v. Flood*, 2004 WL 2951956 at *2 (Mich. App., Dec. 21, 2004) (unpublished) ("Defendant maintained that he took the cell phone because he was owed a debt, but did not claim that he had a legal right to the cell phone. The evidence did not support the giving of" a claim-of-right jury instruction); *see also People v. Konesko*, 2005 WL 1632532 at *3 (Mich. App. July 12, 2005) (holding that "the evidence did not support the assertion that defendant's companion honestly and reasonably believed that he was entitled to possession of the victim's personal property. The circumstances in which the alleged attempt to satisfy the debt occurred - late at night, during a home invasion, and at gun point - do not support a finding that defendant's companion had a legitimate claim of right to the property").

Moreover, the complainant testified that he did not owe anything to the defendants and that there was no discussion about money on the night of the crimes.   Furthermore, Justin Perrou admitted at trial that what he did was wrong and that he was not making excuses for it.  He claimed that he had been drunk at the time and that, in his drunken state of mind, he had felt justified in what he was doing.  In his statement to the police, Justin did not mention that Glaspell owed money to his father; he said that he had decided he would take Glaspell's speakers.  The petitioner, in fact, instructed him to forget about the speakers, because the petitioner simply wanted to talk to Glaspell about the money.  Justin also admitted that neither he nor the petitioner alerted anyone about Norm Glaspell's condition after they left Glaspell's home.

The state court of appeals determined that the record did not support a claim-of-right jury instruction because "[t]here was no evidence that defendants believed, even mistakenly, that the stolen speaker was their own property, or that either defendant believed that they were legally entitled to take the speaker as collateral for a preexisting loan." *People v. Perrou*, 2003 WL 193541 at *2.  That finding is not an unreasonable construction of the facts in this case, nor was the state court's decision that not to give a claim-of-right instruction *sua sponte* or otherwise contrary to or an unreasonable application of federal law.

C.

The petitioner's third habeas claim alleges that trial counsel was constitutionally ineffective because the petitioner's attorney failed to participate in *voir dire* due to a conflict of interest and failed to object to the prosecutor's and the other defense attorney's antagonistic remarks about the petitioner.  Although the respondent argues that these claims are procedurally defaulted because the petitioner failed to raise them on direct appeal (they were raised in a post-conviction motion), a

-13-

federal habeas court need not decide whether an issue is procedurally defaulted before deciding against a petitioner on the merits. *Mahdi v. Bagley*, 522 F.3d 631, 635 (6th Cir. 2008) (quoting *Hudson v. Jones*, 351 F.3d 212, 216 (6th Cir. 2003)). The Court therefore will proceed to address the merits of the petitioner's ineffectiveness claims.

The two-pronged test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), governs claims of ineffective assistance of counsel. *Towns v. Smith*, 395 F.3d 251, 258 (6th Cir. 2005). To show a violation of the Sixth Amendment right to effective assistance of counsel, a petitioner must establish that his attorney's performance was deficient and that the deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 687. An attorney's performance is deficient if "counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. The defendant must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. "Judicial scrutiny of counsel's performance must be highly deferential." *Id*. at 689. The Supreme Court has "declined to articulate specific guidelines for appropriate attorney conduct and instead [has] emphasized that '[t]he proper measure of attorney performance means simply reasonableness under prevailing professional norms.'" *Wiggins*, 539 U.S. at 521 (quoting *Strickland*, 466 U.S. at 688 ).

An attorney's deficient performance is prejudicial if "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687. The petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694. Unless the petitioner demonstrates both deficient performance and prejudice, "it cannot be said that the conviction [or sentence] . . .

-14-

resulted from a breakdown in the adversary process that renders the result unreliable." *Id*. at 687.

1.

The petitioner alleges that his trial attorney refused to use peremptory challenges to dismiss prospective jurors Beller and Tallmadge.  Both Beller and Tallmadge sat on the petitioner's jury, and the petitioner contends that his attorney did not excuse them to avoid antagonizing Justin Perrou's attorney.

The Sixth Circuit has stated:

> [A]mong the most essential responsibilities of defense counsel is to protect his client's constitutional right to a fair and impartial jury by using *voir dire* to identify and ferret out jurors who are biased against the defense.  The Sixth and Fourteenth Amendments to the Constitution guarantee a criminal defendant the right to be tried by impartial and unbiased jurors. *See Morgan v. Illinois*, 504 U.S. 719 (1992).  "The primary purpose of the *voir dire* of jurors is to make possible the empanelling of an impartial jury through questions that permit the intelligent exercise of challenges by counsel." *United States v. Blount*, 479 F.2d 650, 651 (6th Cir. 1973) (citing Wright, 2 Federal Practice and Procedure, ¶ 382 (1969)); *see also Rosales-Lopez v. United States,* 451 U.S. 182, 188 (1981) ("*Voir dire* plays a critical function in assuring the criminal defendant that his Sixth Amendment right to an impartial jury will be honored."); *Mu'Min v. Virginia,* 500 U.S. 415, 431 (1991) (*voir dire* "serves the dual purpose of enabling the court to select an impartial jury and assisting counsel in exercising peremptory challenges").
>
> Counsel's actions during *voir dire* are presumed to be matters of trial strategy. *See Hughes v. United States*, 258 F.3d 453, 457 (6th Cir. 2001); *Fox v. Ward*, 200 F.3d 1286, 1295 (10th Cir.), *cert. denied,* 531 U.S. 938 (2000); *Teague v. Scott*, 60 F.3d 1167, 1172 (5th Cir. 1995).  "A strategic decision cannot be the basis for a claim of ineffective assistance unless counsel's decision is shown to be so ill-chosen that it permeates the entire trial with obvious unfairness." *Hughes*, 258 F.3d at 457.

*Miller v. Francis*, 269 F.3d 609, 615-16 (6th Cir. 2001).

"[C]riminal defense lawyers should be given broad discretion in making decisions during *voir dire*.  Few decisions at trial are as subjective or prone to independent attorney strategy as juror

-15-

*voir dire*, where decisions are often made on the basis of intangible factors. Nor may [the Court] substitute [its] judgment for that of the state appellate court." *Id*. at 620; *see also Miller v. Webb*, 385 F.3d 666, 672-73 (6th Cir. 2004).

Juror Beller stated that he was a high school teacher and that he had read about the defendants' case in the *Bay City Times*. However, he asserted that he did not feel biased, and he stated that he would start with the presumption of innocence, set aside what he had read in the newspaper, and decide the case on the basis of the evidence at trial. Trial Tr., Sept. 6, 2000, at 37-39, 108. Although one of his former students also sat on the jury, neither Mr. Beller, nor the former student (Mr. Lapan), said that they would feel uncomfortable sitting on the jury. *Id*. at 69-70.

Juror Tallmadge was a law enforcement officer in the military, but his miliary service ended sixteen years before the petitioner's trial. He stated that his military service would not influence him if he sat on the jury and that he would not give more credibility to police officers simply because they were engaged in a similar occupation. Mr. Tallmadge also had read about the petitioner's case in the *Bay City Times*, but he stated that he could put aside what he had read and listen to the evidence at trial. He thought that there was a good reason for placing the burden of proof on the prosecutor, and he stated that he would have no difficulty applying the law, including the "beyond a reasonable doubt" standard. Trial Tr., Sept. 7, 2000, at 16-21.

It is not necessary for jurors to be completely ignorant of the facts and issues in a case. *Irwin v. Dowd*, 366 U.S. 717, 722 (1961). It is sufficient if they can lay aside their impressions or opinions and render a verdict based on the evidence presented in court. *Id*. at 723. Both Mr. Tallmadge and Mr. Beller expressed an ability and desire to set aside their past experiences and knowledge about the case and decide the case on the evidence adduced at trial. There is nothing in the record to

-16-

indicate that petitioner's trial counsel subverted his duty to his client in favor of another consideration.  And there is nothing to overcome the presumption of reasonableness that attaches to counsel's performance.

The petitioner has not shown, therefore, that his trial attorney's performance during *voir dire* was deficient.  His ineffective assistance of counsel claim on this ground fails.

### 2.

The petitioner alleges next that defense counsel should have objected to the prosecutor's remarks during closing argument.  He argues that the prosecutor improperly commented on the testimony and invited the jury to decide the matter on an emotional basis rather than a legal one.

The Sixth Circuit has explained that an attorney's failure to object to trial misconduct

> constitutes defective performance when that failure is due to clear inexperience or lack of knowledge of controlling law, rather than reasonable trial strategy. *See, e.g., Gravely v. Mills*, 87 F.3d 779, 785-86 (6th Cir. 1996); *Rachel v. Bordenkircher*, 590 F.2d 200, 204 (6th Cir. 1978).
>
> [E]ven if counsel's performance is deemed deficient, a defendant must show that those deficiencies were prejudicial to the defense.  *See Strickland*, 466 U.S. at 692.  To make this showing, the defendant must demonstrate that there "is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

*Washington v. Hofbauer,* 228 F.3d 689, 702 (6th Cir. 2000).

The prosecutor stated in closing arguments that Justin Perrou's testimony was not credible or truthful and that it was suspicious and self-serving.  Trial Tr., Oct. 3, 2000, at 27, 71-72.  The prosecutor also challenged both defendants' defense of self-defense by stating that the defendants were asking the jury to let them walk away from a situation that they created themselves.  *Id*. at 23-25.

"Ordinarily, a prosecutor may not express a personal opinion concerning the guilt of the defendant or the credibility of trial witnesses, because such personal assurances of guilt or vouching for the veracity of witnesses by the state's representative exceeds the legitimate advocate's role by improperly inviting the jurors to convict the defendant on a basis other than a neutral independent assessment of the record proof." *Caldwell v. Russell*, 181 F.3d 731, 737-38 (6th Cir. 1999), *abrogated on other grounds as explained in Mackey v. Dutton*, 217 F.3d 399 (6th Cir. 2000)). However, because Justin invited examination of his credibility by testifying, the prosecutor was permitted to comment on his credibility and question his veracity. *United States v. Veal*, 23 F.3d 985, 989-90 (6th Cir. 1994) (citing *United States v. Goodapple*, 958 F.2d 1402, 1409-10 (7th Cir. 1992), and *United States v. Hoelker*, 765 F.2d 1422, 1426 (9th Cir. 1985)). The prosecutor's remarks were not improper. Therefore, defense counsel did perform deficiently by not objecting to the prosecutor's remarks about Justin Perrou's testimony.

The petitioner also claims that the prosecutor appealed to the jurors' feelings of anger and prejudice toward him by eliciting sympathy for the complainant. A prosecutor may not make closing remarks that are wholly irrelevant to the facts or issues in the case in order to arouse the jury's passions or prejudices. *Viereck v. United States*, 318 U.S. 236, 247-48 (1943). "[A] prosecutor illicitly incites the passions and prejudices of the jury when he calls on the jury's emotions and fears – rather than the evidence – to decide the case." *Johnson v. Bell*, 525 F.3d 466, 484 (6th Cir. 2008).

The petitioner criticizes several references made by the prosecutor to Mr. Glaspell's injury:

> My argument to you folks is that the person who has a reason to tell you a story in this case is Justin Perrou. Norman Glaspell is gonna be hobblin' around for a long time no matter what your verdict is. Norman Glaspell's gonna have the scar

on his head for a long time no matter what your verdict is.  Justin's got a lot ridin'
on – on your verdict.

. . .

     You saw what the result of their action was when Norman Glaspell took
about five minutes to get from the door to the witness stand.  And you saw what the
– the result of their actions were when – when he came up and showed you the – the
scar on his head where he had the hole and where they had to put plates in his head,
and when he told you that he's gotten – that it's infected now and they might have
to open it back up and take him back up.  That's how you judge what the intent that
somebody didn't assault with had – who – what – what intent a person had in making
an assault.

. . .

Norm testified – I'm not up here to tell you Norm Glaspell is – is a candidate for
sainthood or that he was.  He's just a normal guy tryin' to get by, before this – before
the – the – the attack, he was.  Not a normal guy anymore.  Can't go hunting, can't
hold a regular job, can't drive his car.  Sure as heck can't walk very well.

. . .

     Bottom line, you saw Norm when he came in to testify, when he came up and
showed his – his wound.  You know, he's screwed up, he's messed up.  He's gonna
be messed up for the rest of his life.  Look at the defendants.  They're fine.  <u>They</u>
broke into <u>his</u> house that night.  They had two people, he was one.  They – you bust
into somebody's house at two-thirty in the morning; you steal their property; you had
the intent to do that before you went in, as testified by the defendant; you stab 'im
four separate times –  somebody stabbed him four times, unless he fell three other
times and stabbed himself; you smash him a – over the head so hard that his skull is
– is torn off and – and there's pieces of skull in his brain; and then – and then you
have the – the tenacity and the – the nerve to come in here and ask you folks not to
hold them responsible for this at all, to let them walk away from this situation that
they created themselves and that they intended the result that happened.

     Norm's not gonna lead a normal life again.  Somebody's responsible for that.
And – and this case has shown you that – that the people responsible for that are
those two right there.  And I'm confident that when you folks come back, you're
gonna make them be responsible for their actions.

Trial Tr., Oct. 3, 2000, at 6-7, 9, 29-30.

     The context of the argument makes clear that these comments were not made for an improper

purpose.  The prosecutor asked the jury to consider Mr. Glaspell's injury in the context of evaluating

his credibility compared to that of Justin Perrou, and to consider its relevance on the intent of the

-19-

perpetrators who attacked Mr. Glaspell.  Because those arguments were not improper, defense counsel was not ineffective for failing to object to proper arguments.

The petitioner was not prejudiced by these comments because they were based on the testimony at trial.  The complainant had already testified about his injuries, his surgeries, and his attempts to physically rehabilitate himself.  He was even permitted to show the jurors the hole in his head, Trial Tr., Sept. 26, 2000, at 125-27, and the emergency physician who treated the complainant testified that he had looked into the complainant's gaping head wound and had seen bone fragments in his brain.  Trial Tr., Sept. 27, 2000, at 6.  Because the prosecutor's comments were supported by the evidence, were no more emotional or shocking than the testimony and the physical appearance of the complainant, and were relevant to disputed issues in the case, defense counsel was not ineffective for not objecting to the remarks.

### 3.

The petitioner also takes issue with an argument made by his co-defendant during closing arguments.  Counsel for Justin Perrou stated in his closing argument that on the night of the crime, the petitioner had been looking for an excuse to drink and was not interested in talking about money.  Trial Tr., Oct. 3, 2000, at 38, 42.  The attorney also stated that the petitioner led Justin to the back door of the complainant's house and then entered the house before Justin.  *Id*. at 43.  The petitioner alleges that his attorney should have objected to these remarks because they were antagonistic toward him.   The comment about the petitioner wanting an excuse to drink was supported by the evidence  and was not prejudicial.  The complainant testified that when the defendants first  came

to see him, they had asked if he had any beer.  Trial Tr., Sept. 26, 2000, at 77. He said that the petitioner appeared to have been drinking and was staggering, slurring his words, and he smelled of alcohol.  *Id*. at 117-18.

Justin Perrou also testified about the petitioner's drunkenness.  He claimed that before he and the petitioner went to Mr. Glaspell's house, the petitioner was already drunk.  Trial Tr., Sept. 27, 2000, at 37.  When they arrived at the house, the petitioner wanted to go in, talk, and drink a six-pack of beer with Glaspell.  *Id.* at 48-49.  The purpose of going there, according to Justin, was to enable the petitioner to sit down and drink beer with Norman Glaspell.  *Id*. at 58.

The remark by counsel for the co-defendant was a fair comment on the evidence.  Moreover, the jury was instructed that counsel's arguments were not evidence.  Trial Tr., Oct. 4, 2000, at 7. In addition, the comments about the petitioner's drunkenness and desire to drink tended to support the petitioner's own defense that he was too drunk to form the requisite intent to commit the crimes. There was no legal basis upon which to lodge an objection to these arguments, and the petitioner's trial attorney cannot be faulted for the strategic decision not to object.

The petitioner also alleges that the co-defendant's counsel's comment about the petitioner entering the house first established an element of home invasion by showing that the petitioner had the specific intent to enter the house.  Justin Perrou, however, had already testified that the petitioner entered the house first, Trial Tr., Sept. 27, 2000, at 60-62, and Norman Glaspell testified that both the petitioner and Justin Perrou entered his house without permission.  Trial Tr., Sept. 26, 2000, at 83.  Once again, the remark was a fair comment on the evidence and was unobjectionable.  Defense counsel's silence in this instance did not amount to deficient performance.

Because none of the instances noted by the petitioner constituted deficient performance within the meaning of *Strickland*, the petitioner cannot prevail on his ineffective assistance of counsel claim.

D.

The petitioner's fourth and final habeas claim is that the petitioner's appellate attorneys were constitutionally ineffective because they failed to assist him in filing a supplemental brief raising issues of ineffective assistance of trial counsel based on the failure to excuse two jurors and object to the prosecutor's closing remarks and the co-defendant's attorney's antagonistic remarks.

A criminal defendant has no constitutional right to demand that appellate counsel raise every possible colorable issue on appeal. *Jones v. Barnes*, 463 U.S. 745, 754 (1983). "'[W]innowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Smith v. Murray*, 477 U.S. 527, 536 (1986) (quoting *Jones*, 463 U.S. at 751-52).

The Court has determined that the arguments not raised lacked merit. "[T]here can be no constitutional deficiency in . . . counsel's failure to raise meritless issues." *Mapes v. Coyle*, 171 F.3d 408, 413 (6th Cir. 1999). As the Sixth Circuit has explained, the Court's determination that the unraised issues lack legal merit brings the "inquiry is at an end; by definition, appellate counsel cannot be ineffective for a failure to raise an issue that lacks merit." *Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001).

The petitioner also alleges that his appellate attorney was ineffective because she failed to appear for oral argument. "'[A] trial is unfair if the accused is denied counsel at a critical stage.' The same is true on appeal." *Roe v. Flores-Ortega*, 528 U.S. 470, 483 (2000) (citations omitted).

-22-

In this case, however, the petitioner's former appellate attorney had fully briefed the issues, and the attorney who represented the petitioner at the time of oral argument apparently did not believe that oral argument would have aided the petitioner. It is also noteworthy that the appellate attorney was very ill at the time of oral arguments, and the prosecutor also did not attend oral arguments.

The Court does not condone waiving oral argument on appeal, especially without prior consultation with and agreement of the defendant. However, such a lapse amounts to a constitutional violation only if it renders the proceedings fundamentally unfair. The petitioner has not shown that he would have prevailed on direct appeal if counsel had appeared in person, nor has he demonstrated that he was disadvantaged in any way because his appeal was submitted on briefs. *See Gardner v. Kapture*, 261 F. Supp. 2d 793, 804 (E.D. Mich. 2003) (holding that petitioner failed to demonstrate prejudice where "[t]he record indicates that the prosecution was also denied oral argument, and the court addressed the appellate claims on their merits"). In fact, he was successful on his double jeopardy claim despite counsel's absence from oral arguments. Without some showing of prejudice, the petitioner cannot establish his claim of ineffective assistance of appellate counsel.

IV.

The state court decisions in this case were not contrary to federal law, an unreasonable application of federal law, or an unreasonable determination of the facts. The petitioner has not established that he is presently in custody in violation of the Constitution or laws of the United States.

-23-

Accordingly, it is **ORDERED** that the petitioner's petition for a writ of habeas corpus is

**DENIED**.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated:   August 3, 2009

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on August 3, 2009.

s/Lisa M. Ware
LISA M. WARE

---